**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   STEVEN MECKA,

                                                                       Chapter 7
                                                                       Case No.  15-27118 (CMG)

          Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

William H. Oliver, Jr., Esq.
Attorney for Debtor

Trenk, DiPasquale, Della Fera & Sodono, P.C.
Andrea Dobin, Esq.
Attorneys for Chapter 7 Trustee, Barry R. Sharer

**CHRISTINE M. GRAVELLE, U.S.B.J.**

I.      Introduction

This matter comes before the Court by way of a Motion for Turnover of Property filed by Barry Sharer, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of the debtor, Steven Mecka ("Debtor").  Specifically, the Trustee is seeking recovery of the non-exempt portion of Debtor's state and federal tax refunds for 2013 and 2014, as well as the anticipated refund for the pre-petition portion of the 2015 tax year (the "Refunds").[1]  The issue before this Court is the proper allocation of these Refunds between the Debtor, who is the sole wage earner in his

---

[1] As Debtor filed on September 10, 2015, the Trustee calculates that the bankruptcy estate would be entitled to the refund portion for 8 of the 12 months of earnings, or approximately 66.67%.

household, and his non-debtor spouse.  This Court finds that the entirety of the non-exempt Refunds is an asset of the bankruptcy estate available to the Trustee for turnover.

## II. Jurisdiction and Venue

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (E).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

## III. Procedural History and Relevant Facts

Debtor filed a Chapter 7 bankruptcy petition on September 10, 2015. Debtor is married with three children.  His wife is not listed as a debtor on the petition.  Debtor is employed by Ocean County, New Jersey as a detective.  His non-debtor spouse is not employed outside of the home and does not draw an income.  The Debtor notes the need for his wife to stay home with the children, both of whom are dealing with digestive problems requiring a costly type of formula.

Pursuant to 11 U.S.C. § 341(a), the Trustee conducted the first meeting of creditors on October 14, 2015.  At that time it came to light that Debtor's 2013 and 2014 tax returns had not been timely filed.  Both the state and federal returns provided to the Trustee were filed as "Married Filing Jointly".  The federal returns, each dated October 12, 2015, indicate a refund in the amount of $7,692 due for the 2013 tax year, and a refund in the amount of $7,688 due for the

2014 tax year. The state tax returns, each undated,[2] indicate a refund in the amount of $874 due for the 2013 tax year, and a refund in the amount of $1,003 due for the 2014 tax year. Thus, in total for the two tax years, Debtor is entitled to refunds totaling $17,257. Debtor's accountant certifies that, had Debtor and his non-debtor spouse filed as "Married Filing Separately" for the 2013 and 2014 tax years, they would receive a combined federal and state tax refund of $2,781.[3]

Shortly after the meeting of creditors, Debtor amended his schedules to reflect the Refunds.[4] On October 22, 2015 he filed an amended Schedule B listing "Recently filed Joint 2013 & 2014 Taxes" as personal property. The entry notes the value of the Refunds at $15,380, which corresponds to the total 2013 and 2014 federal refunds, but does not appear to include the value of the state refunds for the corresponding years. No anticipated 2015 state or federal tax refund appears in the entry.[5] Additionally, the entry indicates a ½ interest in the Refunds, setting the current value of the Debtor's interest in the property at $7,690. On Debtor's amended Schedule C he claims a $7,225 exemption on the Refunds under 11 U.S.C. § 522(d)(5).

The Trustee does not contest the exemption claimed by the Debtor against the Refunds. He does, however, contest the valuation that the Debtor has placed on the asset, essentially arguing that because Debtor is the sole wage earner in the household, the entirety of the Refunds is property of the Debtor and the bankruptcy estate, not merely a ½ interest as listed on the amended Schedule B.

Though the Trustee has taken steps to intercept the federal tax refunds for 2013, 2014 and 2015, he seeks an order requiring that the Debtor turn over any of those refunds which may be

---

[2] The Trustee has assumed that the state returns were filed on or around the October 12, 2015 federal returns. In his opposition to the motion Debtor has not presented any argument that the 2013 and 2014 state refunds were received pre-petition, and therefore potentially not property of the estate.
[3] $1,708 for the 2014 tax year and $1,073 for the 2013 tax year.
[4] At ECF Docket No. 9.
[5] Tax returns for the 2015 tax year are not yet due.

sent to the Debtor, as well as all state tax refunds for the applicable years that are received by the Debtor. Debtor has opposed the motion to the extent that it seeks the entirety of the Refunds, as opposed to his purported ½ interest.

The motion therefore, while styled as a "Motion for Turnover of Property," is seeking a determination of the value of the Debtor's interest in the property based upon the allocation of the Refunds between Debtor and his non-debtor wife. After briefing and oral argument, the Court is prepared to rule.

IV.    Discussion

We begin by reciting the well-established law set forth in the Bankruptcy Code that the filing of a bankruptcy petition under Title 11 creates an estate comprised of, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." Butner v. United States, 440 U.S. 48, 54, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979).

There is very little law in New Jersey that addresses the property rights of spouses in a tax refund issued on a jointly filed federal tax return. Nor, for that matter, does state law offer much guidance as to property rights of spouses in a tax refund paid on a jointly filed state tax return. State tax law tracks federal law in that it requires married couples who file joint federal returns to file joint state returns, and married couples who file as "married filing separately" to do the same with their state return. See N.J.S.A. § 54A:8-3.1(b) and (c) (state tax liability for married couple determined based on federal tax filing).

The sole state court decision applicable to this matter recognized that federal law must be applied to determine tax liability issues since the income tax is imposed by federal law. See In

the Matter of Carson, 83 N.J. Super. 287, 290 (N.J. Super. 1964)[6]. Consistent with the later holding of the U.S. Supreme Court in Butner, it noted "[t]he importance of local law concerning property rights when dealing with federal revenue statutes…" *See* id. Nevertheless, the Carson court looked to federal law to reach its decision in addressing the ownership interests of a married couple in a federal tax refund issued as a result of a joint tax filing. In Carson, the widow of the sole income earner and the income earner's probate estate made claims to the refund. The Carson court held that the refund belonged to the filer who paid the withholding and that "the mere filing of a joint return" did not change that ownership right. *See* id., 83 N.J. Super. at 292. It found that the deceased held a 100% ownership interest in the tax refund because he earned the sole income for the couple and, as a result, made the only contributions to the tax withholding. See id. The Carson court ordered that the full refund be paid to the probate estate.

While New Jersey state law on the issue is sparse, numerous bankruptcy courts around the country have ruled on factual situations similar to the one at bar. These courts have taken three different approaches when determining what portion of a tax refund due on a jointly filed return is property of the bankruptcy estate when only one spouse files bankruptcy. The first line of cases, employed by the Carson court and which to date has been considered the majority approach, holds that a joint tax refund should be allocated between spouses in accordance with

---

[6] Another case, In re Estate of Hoffman, 63 N.J. 69 (1973) addressed the issue of ownership of tax refunds between spouses, but this Court does not find it persuasive as it is decided on different grounds and is distinguishable on its facts. In re Estate of Hoffman addressed tax refunds paid on a jointly filed return, which was prepared and filed pursuant to a settlement agreement in a divorce action. The tax refunds arose after the death of the sole income earner. Three claimants sought to establish their ownership interests in tax refunds paid on jointly filed tax returns: the surviving ex-spouse, the accountant who prepared the tax returns for a fee contingent upon production of the refunds, and the probate estate. The Hoffman court ordered that the accountant's fee be first satisfied from the refund and that the remaining refund be divided equally between the ex-spouse and the probate estate. *See* id. at 82-83. We find that case to be of minimal value, as the New Jersey Supreme Court analyzed the asset through the lens of contract and equitable distribution law, and did no analysis of whether the rights to the overpayment were in any way related to income.

the tax withholdings of those parties (the "Withholding Approach").  *See*, *e.g.*, In re Carlson, 394 B.R. 491 (B.A.P. 8th Cir. 2008); In re Kleinfeldt, 287 B.R. 291 (B.A.P. 10th Cir. 2002); In re Gartman, 372 B.R. 790 (Bankr. D.S.C. 2007); In re Edwards, 363 B.R. 55 (Bankr. D. Conn. 2007); In re WDH Howell, LLC, 294 B.R. 613 (Bankr. D.N.J. 2003); In re Levine, 50 B.R. 587 (Bankr. S.D. Fla. 1985).

The second approach holds that a joint return should be divided in proportion to the income of the parties (the "Income Approach").  *See*, *e.g.*, In re Kestner, 9 B.R. 334 (Bankr. E.D. Va. 1981).[7]

The final approach, which has been applied in an increasing number of cases, holds that each spouse owns the refund equally, and it should therefore by allocated equally between the two (the "50/50 Approach").  *See*, *e.g.*, In re McKain, 455 B.R. 674 (Bankr. E.D. Tenn. 2011); In re Glenn, 430 B.R. 56 (Bankr. N.D.N.Y. 2010); In re Garbett, 410 B.R. 280 (Bankr. E.D. Tenn. 2008); In re Trickett, 391 B.R. 657 (Bankr. D. Mass. 2008); In re Marciano, 372 B.R. 211 (Bankr. S.D.N.Y. 2007); In re Innis, 331 B.R. 784 (Bankr. C.D. Ill. 2005); In re Barrow, 306 B.R. 28 (Bankr. W.D. N.Y. 2004); In re Hejmowski, 296 B.R. 645 Bankr. W.D.N.Y.); In re Aldrich, 205 B.R. 907 (Bankr. W.D. Tenn. 2000).

The tension between tax law and matrimonial law is to blame for these differing approaches.  Generally, courts applying the Withholding Approach or Income Approach cite to tax law to support their holdings.  Tax law states that "filing a joint tax return does not convert the income of one spouse into the income of another spouse."  In re Kleinfeldt, 287 B.R. at 293 (quoting Callaway v. Comm'r of Internal Revenue, 231 F.3d 106, 117 (2d Cir. 2000)).  This remains the case even though a non-debtor spouse is held jointly liable for any tax deficiencies.

---

[7] The Trustee noted that, as the non-debtor spouse in this case earned no income, she would not have any rights to the Refunds under either the Withholdings Approach or the Income Approach. However, as the Trustee did not argue the Income Approach, it will not be discussed further herein.

*See* In re WDH Howell, LLC, 294 B.R. at 618 (citing Coerver v. Commissioner, 36 T.C. 252 (1961), *aff'd* per curiam, 297 F.2d 837 (3d Cir. 1962)).  Additionally, "[a] joint return does not itself create equal property interests for each party in a refund.  Spouses who file a joint return have separate interests in any overpayment, the interest of each depending upon his or her relative contribution to the overpaid tax."  Id. (quoting United States v. Elam, 112 F.3d 1036, 1038 (9th Cir. 1997)).

The decision of the Carson court is consistent with this line of tax cases.  That court noted that the purpose of 26 U.S.C. § 6013, the statute through which joint returns are allowed, was to equalize the tax burden for couples in common law and community property states.  In the Matter of Carson, 83 N.J. Super. at 290.  It went on to state that the statute, "was not intended to deal with ownership rights between taxpayers."  Id.

Courts applying the 50/50 Approach have generally given more weight to matrimonial law, relying on the reasoning behind state divorce laws regarding the division of marital property. Many of these courts focus on the economic partnership aspect of a marriage which forms the basis for these laws, finding, for example, that marriage is viewed, "as an economic partnership and that, upon dissolution of the marriage, the tangible fruit of that partnership, the marital property, should be equitably divided between the parties." In re Marciano, 372 B.R. at 215 (quoting Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006)).

Further, those courts adopting the 50/50 Approach note that both the Income Approach and the Withholding Approach are not necessarily supported by application of the Internal Revenue Code.  As eloquently noted by the Barrow court:

> The reality of the Internal Revenue Code is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings.  For many taxpayers, a significant portion of the refund is attributable not to these factors, but to

>    any of a number of credits, such as the child tax credit or credits for education or for child and dependent care expenses. In many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use that exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income. For many married couples, a joint filing permits use of a more favorable tax table. The results are most dramatically illustrated when one spouse earns the entire family income. In that instance, because a spouse without income has joined in signing the tax return, the family may pay significantly less tax, as compared to the tax that would have accrued to a married person filing separately but with identical income and withholdings. It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse.

In re Barrow, 306 B.R. at 30-31. Thus, these courts have concluded that the joint venture of marriage creates a joint economic unit which files a joint tax return. Any refund as a result of that return is therefore a joint asset that the spouses own in equal shares. Some courts adopting the 50/50 Approach have also incorporated a rebuttable presumption, holding that a couple's pattern of financial management may change the joint nature of ownership in a refund. *See generally*, In re Marciano, 372 B.R. at 216.

The Trustee relies on the single bankruptcy court decision in this district that discusses ownership of tax refunds and adopts the Withholding Approach. *See* In re WDH Howell, LLC, 294 B.R. 613. The WDH Howell court, which was presented with facts substantially similar to the case before this Court, reached its conclusion after examining New Jersey's equitable distribution criteria and finding that statute applicable only to divorce proceedings. Id. at 617; *see also* N.J.S.A. § 2A:34-23.1. The court cited to New Jersey caselaw stating that the equitable distribution statutes do not apply upon the death of a spouse, but only when a judgment of divorce is entered. Id. (citing to Carr v. Carr, 120 N.J. 336, 342 (1990)). The court distinguished between a divorce proceeding, where a court is concerned with distribution of assets between the spouses, and a bankruptcy proceeding, where a court is concerned with distribution of assets

among creditors of the debtor. Id. Since the spouse in In re WDH Howell, LLC was not a debtor or a creditor, the court found that she was not entitled to any distribution through the bankruptcy. Id.

Debtor bases his position on the the economic partnership theory of marriage, emphasized by New Jersey courts in numerous matrimonial law cases. The state Supreme Court has stated that the institution of marriage, "is a shared enterprise, a joint undertaking, that in many ways is akin to a partnership." Rothman v. Rothman, 65 N.J. 219, 229 (1974). In another case, it further recognized that "each spouse contributes something to the establishment of the marital estate, even though one or the other may actually acquire the particular property." Chalmers v. Chalmers, 65 N.J. 186, 194 (1974). This idea has been codified by the New Jersey legislature, which, with regards to equitable distribution, has made it "a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married." N.J.S.A. § 2A:34-23.1.[8] Debtor argues that the 50/50 Approach is the better method in light of the strong public policy goals behind marriage as an economic partnership, many of which are incorporated into the tax code through credits and other such mechanisms.

The differing approaches each offer a simple and practical solution to a complex issue. But neither addresses the heart of the problem recognized by the Barrow court and quoted above; that the amount of the tax refund is the difference between the tax assessed and the amount of tax withheld, and the amount of the tax is not calculated on income alone, at least not at this juncture in our political landscape. The amount of the tax assessed depends on the types and amounts of deductions, exemptions, and credits available to each filer. Absent any other legislative direction

---

[8] The New Jersey legislature applies this rebuttable presumption to ownership of jointly held assets outside the matrimonial context as well. See, e.g., N.J.S.A. § 17:16i-1, et. seq. (Multiple-Party Deposit Account Act).

regarding ownership of a refund based on these tax attributes, this Court is constrained to rely on the Internal Revenue Code and the New Jersey cases that apply it.

Here, the asset in question is ownership of the right to the Refunds, the amounts of which were determined upon the filing of joint returns.[9] This Court's review of federal tax law establishes that the right to the overpayment is based upon the amount of each party's withholdings. Similarly, the only New Jersey state court decision, and the single bankruptcy court case from this district, that addresses this issue hold that the filing of a joint refund does not change the right to the overpayment.

While Debtor's arguments regarding the effect of credits and exemptions on the amount of the Refunds are well taken, he has not cited to any tax caselaw, nor has he cited to any New Jersey cases to support that theory. Debtor's position is based almost entirely on the economic unit theory. For the reasons stated below, we believe that the economic unit theory is insufficient to ascribe ownership of the right to overpayment to the non-debtor spouse. We therefore find that the asset belongs solely to Debtor as the sole earner.

Finding that the asset is wholly owned by Debtor and is a part of his bankruptcy estate is not at odds with the concept that the non-debtor, non-income producing spouse provides value to the economic partnership. Much of the caselaw in support of the 50/50 Approach is premised on the equitable distribution laws of the states in which those cases arise. Those laws apply only after a divorce complaint has been filed and do not change legal title to marital assets. They simply direct the equitable division of all marital property, without regard to how title to the marital property may be held. Bankruptcy law focusses on assets owned by the debtor and the

---

[9] The analysis may be different if the nature of the asset changed from the right to an overpayment into the refund check itself, if said check was jointly payable to both the debtor and the non-debtor spouse. However, that is not the scenario before us as all of the joint returns in question were filed post-petition. The Trustee's claim is based in ownership of the Refunds, not in a payment evidenced by a check made jointly payable to spouses.

rights of the creditors of the debtor in those assets. The Third Circuit recognizes the right of a spouse to make a claim against the debtor estate only if a divorce complaint was filed prior to the bankruptcy petition. In re Ruitenberg, 745 F.3d 647 (3d Cir. 2014). The right to a claim, post-divorce filing, significantly differs from the ownership interest in the Refunds that Debtor herein is claiming on behalf of his non-debtor spouse.

The existence of an economic partnership does not change the legal ownership rights of individual assets. For instance, married couples may choose to open bank accounts in the name of only one spouse. They may title automobiles, boats, or other assets purchased during the marriage in the name of only one spouse. While it may be well established for equitable distribution purposes that each party has made a contribution to the acquisition of each individual asset, that interest is not fixed until such time that a divorce complaint is filed. Even at such point, for bankruptcy purposes, the spousal interest is defined as claim, not a standalone legal right to ownership of half of each asset regardless of the identity of the titled owner.

While there is no easy answer, this Court finds the property right analysis set forth in tax law to be the most sound approach to determining whether an asset belongs in a debtor's estate. Adopting the 50/50 Approach would have the potential of allowing non-debtor spouses to claim ownership of half of virtually all of the assets in their debtor spouse's bankruptcy without regard to whether the non-debtor holds legal title. For instance, a non-debtor spouse could apply similar reasoning in making an argument that his or her contributions to the marriage should be recognized in relation to a bank account titled only in the debtor's name. This theory is contrary to basic property law. The potential for abuse in such scenarios is apparent.

While we are respectful of the great value that a non-income producing spouse can provide to an economic partnership, we find that in the present matter the Withholding Approach

is most consistent when balancing the policies and goals of both matrimonial and tax law as applied to the Bankruptcy Code. We recognize that even within this approach there are significant flaws which can be contemplated in various hypothetical situations. However, in the absence of any additional legislative guidance, we must apply the applicable statutes and caselaw to reach what we feel is the most logical outcome, despite our reservations.

V.   Conclusion

For the reasons stated above, we find that the Refunds constitute property of Debtor's bankruptcy estate, and must be turned over to the Trustee. The Court will enter an order consistent with this decision.

Dated: April 1, 2016                              /s/Christine M. Gravelle
                                                  United States Bankruptcy Judge